UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **OLEG NEIZVESTNY**<br><br>      **Plaintiff,**<br>v.<br><br>**MARGARITA RISIS and DANIEL RISIS,**<br><br>      **Defendants.** | Civil Action No. 19-20398 (MF)<br><br>**OPINION** |

**FALK, U.S.M.J.**

  This case is essentially based in fraud and breach of contract. Plaintiff alleges that Defendants orchestrated a scheme to deprive him of his investment in a joint venture he entered into with them. At the conclusion of a multi-day settlement conference before the Undersigned, the parties placed a settlement on the record which was later reduced to a written settlement agreement. Before the Court is Plaintiff's motion to enforce the settlement. (CM/ECF No. 48.) Defendants oppose the motion. The motion is decided on the papers. Fed.R.Civ.P. 78(b). For the reasons set forth below, the motion is **granted**.

## BACKGROUND

### A. The Joint Venture

In 2011, Plaintiff, Oleg Neizvestny ("Oleg" or "Plaintiff"), entered into a joint venture pawnshop business with Defendants Daniel Risis ("Daniel") and his mother, Margarita Risis ("Margarita") (together referred to as "Defendants"). Oleg and Margarita signed an Operating Agreement for the creation of the entity, Perfect Pawn LLC ("Perfect Pawn") through which the pawnshop business was to operate. Pursuant to the Operating Agreement, Oleg and Margarita were to be equal partners in Perfect Pawn. (Compl. ¶ 25.) Plaintiff claims to have invested more than $1 million on the promise by Defendants that he was a 50% owner in Perfect Pawn. (Id. ¶¶ 42-46; Declaration of Simon Miller ("Miller Decl.") CM/ECF No. 48-1 at 2.) However, according to Plaintiff, Perfect Pawn was never formed. Plaintiff claims that for years Defendants engaged in a fraudulent scheme to treat him as a partner-owner of Perfect Pawn, convincing him to contribute monies and forego profits in order to grow the pawnshop business. Upon learning of the alleged fraud perpetrated by Defendants, Oleg filed suit against Daniel and Margarita seeking the value of his intended investment.

Plaintiff filed a Complaint on November 15, 2019, asserting claims for, *inter alia*, fraud and breach of contract, and seeking injunctive relief. On December 19, 2019, District Judge William J. Martini entered an Order granting a Preliminary Injunction.[1]

---

[1] The Order prohibited, among other things, Defendants from taking "any action with respect to the Perfect Pawn business outside the ordinary course of business" and removing or transferring "any inventory, assets, or funds from Perfect Pawn stores or warehouses, or any bank accounts which Defendants use in connection with the operation of the Perfect Pawn stores, except as necessary in the normal operation of business." (CM/ECF No. 18.)

On December 31, 2019, Judge Martini entered a scheduling order. Defendants filed an Answer on January 21, 2020. Defendant Daniel Risis also filed a Counterclaim regarding an entity, Dalex Development, Inc. ("Dalex"), in which Plaintiff and Daniel were the sole shareholders. Dalex owned a commercial property in Wayne, New Jersey. The Counterclaim alleges, *inter alia,* that Plaintiff did not make his 50% contribution to Dalex and seeks approximately $179,000.

### B. The Settlement Process

Following additional motion practice before the District Judge,[2] the Undersigned, as the Magistrate Judge assigned to the case, conducted an initial status/settlement conference with the parties on February 28, 2020. At the request of the parties the Undersigned engaged in an ongoing process to try to help the parties reach a settlement. Initially, an in-person settlement conference was held on March 10, 2020. The parties appeared three more times before the Court during May 2020, including a settlement conference via videoconference on May 13, 2020.[3] The Undersigned conducted at least three more conferences in June, which included continuation of the May 13 settlement conference via videoconferences on June 3 and June 23, 2020.[4] The settlement process was lengthy and comprehensive and was conducted with the active participation of the parties and their numerous counsel.

---

[2] On February 18, 2020, the District Judge denied Plaintiff's motion for a temporary restraining order to enforce the preliminary injunction. Pursuant to the Order, the Court's December 19, 2019 Preliminary Injunction remained in effect. (CM/ECF No. 28.)

[3] Due to the Covid-19 pandemic, all conferences in May 2020, forward were conducted telephonically or via the cloud-based videoconferencing service, Zoom. The May 6 and 19 conferences were conducted telephonically.

[4] The Court also conducted a telephone conference on June 17, 2020.

### C. The Settlement Agreement

Ultimately, following a lengthy videoconference on June 23, the parties reached a settlement. Counsel and the individual parties—Oleg, Daniel and Margarita— appeared at and participated in the June 23 video conference. At the conclusion of the conference, the parties placed the terms of their settlement on the record. Each of the parties indicated their agreement and approval with the terms of the settlement. The June 23rd on-the-record settlement by the parties was memorialized in a written Settlement Agreement ("Agreement" or "Settlement Agreement") which provided that each Defendant would be jointly and severally liable for the settlement payments. (Settlement Agreement CM/ECF No. 48-2, ¶ 1(g).) Daniel signed the Agreement on July 29, 2020. The Agreement contains provisions governing the timing and amount to be paid by Defendants to Plaintiff, among certain other terms. Specifically, the Agreement provided for a settlement payment of $613,000, which included an upfront payment to Oleg of $125,000 upon the signing of the Agreement. (CM/ECF No. 48-2.) The Agreement also provides for the transfer to Daniel of Oleg's 50% interest in Dalex, an entity jointly owned by Daniel and Oleg. In return, Daniel agreed to remove Plaintiff's obligations under the existing mortgage on the property owned by Dalex (the "Dalex Property"), and indemnify Plaintiff for any costs or damages associated with those obligations. (Settlement Agreement CM/ECF No. 48-2, ¶ 9(e).)

### D. Consent to Magistrate Judge Jurisdiction

As part of the Settlement the parties expressly requested that the Undersigned retain jurisdiction to enforce the Agreement, if necessary. This was stated on the record

and also included in the written agreement. In accordance with their agreement, the parties submitted the appropriate consent form, which was signed by the District Judge and entered on the docket on August 27. (CM/ECF No. 51).

### E. <u>Alleged Breach of Settlement Agreement</u>

According to Plaintiff, Defendants failed to make any payment due and owing under the Agreement. On July 23, 2020, Plaintiff's Counsel sent written notice of default to Defendants. (Miller Decl. CM/ECF No. 48-1 at ¶ 9.) Plaintiff states that Daniel failed to cure his default and Margarita never signed the Agreement or took any steps to honor the settlement. (*Id.*). Plaintiff now moves to enforce the settlement.

### F. <u>Motion to Enforce the Settlement Agreement</u>

Plaintiff filed the instant motion seeking an order and entry of judgment enforcing the terms of the June 23, 2020 settlement against Daniel and Margarita, set forth on the record and in the written Settlement Agreement.

#### (i) *Defendants' arguments*

Defendants contend that the agreed upon settlement is unenforceable against Daniel for two reasons. First, Defendants contend that when the terms of the settlement were placed on the record on June 23, 2020, as well as when Daniel executed the Settlement Agreement on July 29, 2020, Daniel was acting under a mistake of fact regarding the legal status of the Dalex Property. Specifically, Defendants contend that although Daniel knew that the Dalex Property was the subject of a foreclosure action in state court, he didn't know at the time he agreed to the settlement that it was the subject of a default judgment motion in the foreclosure (which was apparently granted months

after the settlement here). Although not entirely explained or substantiated, the argument seems to be that Daniel intended to refinance the Dalex property to help fund the settlement and the existence of a pending default judgment motion or a default judgment (both are argued in different places in Defendants' motion papers) in the foreclosure case would make that impossible. Second, Defendants argue that the proposed settlement was made expressly contingent on the execution of a written settlement agreement by all parties, and that the settlement cannot be consummated because Margarita never executed the Agreement.

With regard to Margarita, Defendants also assert that Plaintiff never provided the required notice that Margarita was in default of her settlement obligations.

(ii) *Plaintiff's arguments*

Plaintiff asserts that the settlement is enforceable against both Defendants. Plaintiff contends that if Daniel actually was unaware of a default motion in the longstanding Dalex foreclosure case, Daniel's own negligence is not an excuse for non-performance of the contract. Noting that Daniel admits knowledge of the foreclosure at the time of the settlement and the Settlement Agreement actually references the Dalex mortgage foreclosure action, Plaintiff argues that Daniel's purported lack of knowledge of entry of a default judgment cannot be the basis to rescind the Settlement Agreement. Plaintiff maintains that had Daniel simply looked at the docket or checked on the status of the foreclosure action, he would have known that a motion for default was pending. Plaintiff further contends that his purported unilateral "mistake" does not meet the high threshold for rescission under New Jersey law and that it would be unjust, inequitable and

prejudicial to permit Daniel to continue to avoid his contractual obligations to Oleg by hiding behind his own negligence.

Plaintiff also contends that the settlement is enforceable as to both Daniel and Margarita because both parties assented to its terms on the record. Plaintiff also contends that Daniel is bound by the Agreement because its very terms provide that "[e]ach Defendant is both jointly and severally liable for the Settlement Payment." (Settlement Agreement CM/ECF No. 48-2, ¶ 1(g).) Plaintiff argues that because the Agreement expressly provides for joint and several liability, it is enforceable against Daniel regardless of Margarita's unjustified failure to sign it.

### G.  Motion to Withdraw by Defendants' Counsel

On September 22, 2020, Defendants' counsel, Coughlin Duffy, LLP moved to withdraw as counsel. Despite bitter accusations which need not be repeated here, Daniel seemed to oppose the motion. A formal hearing was held and the motion to withdraw was granted by Order dated October 14, 2020. (CM/ECF No. 65.) Since then, three new lawyers have appeared for Defendants, the third group of attorneys who have represented Defendants in this case. New counsel filed an additional opposition to the instant motion, primarily rehashing the argument that the agreement can't be enforced because it wasn't signed by Margarita.

## DISCUSSION

### A.  Legal Standard

A settlement agreement between parties to a lawsuit is a contract and disputes concerning its terms are to be resolved by applying principles of contract law. *See*

*Mortellite v. Novartis Crop Protection, Inc.*, 460 F.3d 483, 492 (3d Cir.2006) (citing *Haledon v. N. Haledon*, 358 N.J.Super. 289, 817 A.2d 965, 975 (App. Div. 2003)).  New Jersey has a strong public policy in favor of settlements.  *See Longo v. First Nat'l Mortg. Sources*, 523 F. App'x 875, 878 (3d Cir. 2013); *Lawton v. CVS Pharmacy*, No. 06-3406, 2007 WL 980451, *2 (D.N.J. Mar. 28, 2007) (citing *Pascarella v. Bruck*, 190 N.J.Super. 118, 462 A.2d 186 (App. Div. 1983), *certif. denied,* 94 N.J. 600, 468 A.2d 233 (1983)).  Courts will "strain to give effect to the terms of a settlement wherever possible."  *Lawton*, 2007 WL 980451, at *2 (quoting *Dep't of Public Advocate v. N.J. Bd. of Public Utilities*, 206 N.J.Super. 523, 527-28, 503 A.2d 221 (App. Div. 1985)).  Settlement agreements will be enforced absent a showing that they were achieved through fraud or other compelling circumstances.  *See Lawton,* 2007 WL 980451, at *2 (citations omitted).

An agreement to settle a lawsuit is binding upon the parties even in the absence of a writing.  *See Green v. John H. Lewis Co.,* 436 F.2d 389, 390 (3d Cir.1970).  Courts will enforce oral settlement agreements notwithstanding the absence of a future written agreement.  "If the negotiations are finished and the contract between the parties is complete in all its terms and the parties intend that it shall be binding, then it is enforceable, although lacking in formality and although the parties contemplate that a formal agreement shall be drawn and signed." *Excelsior Ins. Co, v. Pennsbury Pain Ctr.*, 975 F. Supp. 342, 349 (D.N.J. 1996) (citing *Moran v. Fifteenth Ward Bldg. & Loan Ass'n,* 131 N.J.Eq. 361, 366, 25 A.2d 426, 430 (Ch.1942)). "Thus, so long as the parties agree upon the essential terms of a settlement, leaving the details to be 'fleshed out' in a writing thereafter, courts will enforce settlement agreements notwithstanding the absence

of a future writing." *Id.* (quoting *Lahue v. Pio Costa,* 263 N.J.Super. 575, 596, 623 A.2d 775 (App. Div.1993); *see also, Pascarella,* 190 N.J.Super. at 124, 462 A.2d at 191 (noting that an agreement to settle a lawsuit, voluntarily entered into, is binding even in the absence of a writing)).

### B. <u>Analysis</u>

#### *(i)    The settlement is a binding contract*

It is undisputed that the parties entered into a binding settlement contract. *See United States v. Lightman*, 988 F.Supp. 448, 458 (D.N.J. 1997) (settlement occurs "where there is offer and acceptance and terms are sufficiently definite that the performance to be rendered by each party can be ascertained with reasonable certainty."). There is no dispute that Daniel and Margarita voluntarily participated in painstaking settlement negotiations with Plaintiff over the course of about ten court-ordered conferences which resulted in the parties agreeing on essential terms and manifesting to be bound by them. The terms were placed on the record by Oleg, Daniel and Margarita with the assistance of counsel on June 23, 2020. (See Transcript, CM/ECF No. 56.) There is also no question that on July 29, 2020, Daniel signed a written Settlement Agreement which memorialized the parties' agreed upon settlement terms. Finally, Daniel concedes in his Declaration in opposition to this motion that he reached a settlement on June 23. Because the Court finds that a valid settlement agreement exists, the burden shifts to Defendants to demonstrate why the contract should be vacated. *See Jennings v. Reed*, 381 N.J. Super. 217, 227 (App. Div. 2005). For the reasons stated below, Defendants have failed to satisfy their burden and Plaintiff's motion to enforce the settlement will be granted.

### *(ii)   Mistake is not a basis to rescind the contract*

In order to decide whether the Settlement Agreement is enforceable against Daniel, the Court must determine whether Daniel's purported unilateral mistake regarding the status of the Dalex Property foreclosure case constitutes an adequate reason for rescinding the Agreement.  The Court has considered the factors governing the remedy of rescission and finds that its application is not warranted here.

A unilateral mistake of fact may warrant rescission of a settlement agreement where: (1) the mistake was of such consequence that to enforce the contract as actually made would be unconscionable; (2) the matter as to which the mistake was made must relate to the material feature of the contract; (3) the mistake must have occurred notwithstanding the exercise of reasonable care by the party making the mistake, and (4) it must be able to get relief by way of rescission without serious prejudice to the other party, except for loss of his bargain.  *See Stephenson v. Spiegle*, 429 N.J.Super. 378, 385 (App. Div. 2013) (citing *Villanueva v. Amica Mutual Ins. Co.*, 374 N.J. Super 283, 289-90 (App. Div. 2005)).  The relief of rescission, however, cannot be granted where the mistake occurs as a result of the mistaken party's own negligence.  *See Weisman v. New Jersey Dep't of Human Services*, 982 F.Supp.2d 386, 394-95 (D.N.J. 2013) (citing *Baig v. Nuclear Regulatory Comm'n*, No. 10-842, 2013 WL 1558707, at *3 (D.N.J. April 10, 2013))

Daniel's ostensible "mistake" regarding the status of the foreclosure action on the Dalex Property does not warrant rescission.  Enforcement of the settlement would not be unconscionable as Daniel's mistake (if it actually was a mistake) regarding the Dalex

Property was not material to the settlement and was the result of his own lack of reasonable care. Failure to enforce the settlement would certainly cause prejudice to Plaintiff and would be an injustice. Although the Court has been provided no details, it appears as a practical matter that the subject of the mistake, the default, can likely still be rectified. Accordingly, Plaintiff's motion should be granted.

Daniel states that had he been aware of a pending default judgment motion in the foreclosure action (which was apparently granted on July 17, 2020 weeks <u>after</u> the settlement here), he would not have agreed to the settlement on the record or later signed the Settlement Agreement. (Declaration of Daniel Risis ("Risis Decl.") at ¶¶ 7-11.) He claims that he intended to refinance the Dalex Property and use the proceeds to make settlement payments to Plaintiff pursuant to the cash component of the Agreement. Contending that because there was a request to enter default in the Dalex foreclosure matter, he no longer has the ability to refinance the property and that therefore enforcement of the Agreement is somehow unconscionable. Virtually no details are provided for Defendants' position and there is no showing or explanation how enforcement would be unconscionable. For example, there is no indication of the value of the Dalex property or the amount of equity, the amount of the mortgage, how long the mortgage had been in default, what the interest rate on the mortgage is, or how any of this would affect refinancing. Not that any of this information would prevent court enforcement of the settlement.

There can be absolutely no doubt that any mistake is due to Defendant's lack of care. Daniel concedes that he knew of the pending Dalex foreclosure matter at the time

of the settlement. Indeed, there are pleadings in that state court case that appear to have been served directly on Daniel many months before the June settlement, that were apparently submitted on this motion. The foreclosure action is actually mentioned in the Settlement Agreement in this case indicating that "Daniel shall indemnify...Oleg…from defending the current mortgage foreclosure case." In his Declaration opposing this motion, Daniel states that it was his understanding that his (then) legal counsel in this case would be representing him in the Dalex foreclosure action, and that he "does not recall" being informed of any motion to enter default. (Risis Decl. at ¶ 7.) Again, no details are provided. However, to not inquire or even consider the status of the Dalex property, if it was important to Defendant's motivation for settlement, is strange, unexplained and inexcusable—especially when he and his attorney were personally involved in the settlement here.

      Although not argued by the Plaintiff, the very premise of Daniel's argument—that he could not refinance because there was a pending default motion in a long pending foreclosure action during a pandemic—is unexplained and frankly defies logic. Surely, the foreclosure action would have to be disclosed to any refinancing institution, regardless of a pending default motion or even a default judgment. Either way the current mortgage would have to be addressed. Also, the actual default judgment was entered after the settlement and only a few months ago. Defendant could have (or probably still can) move to vacate any judgment, which presumably would be granted as Courts prefer an adjudication on the merits rather than judgment by default. Indeed, if qualified to refinance, Daniel could probably arrange for refinancing with a lending

institution, even after a default judgment.  Also, it must be noted again that no details or numbers have been provided to the Court.   More importantly, the settlement in this case was in no way made contingent on anything to do with the Dalex property.  For these and other reasons, there is nothing material about Daniel's knowledge of a separate litigation.

Finally, the Court finds that Plaintiff would be prejudiced by recission of this carefully negotiated settlement.  Significant party resources were expended to reach the settlement.  Substantial judicial resources as well.  In addition, Plaintiff's case has been on hold for many months while the parties hammered out a settlement.  Plaintiff also argues that he has been prejudiced because defendants have been free to dissipate assets to other companies beyond the reach of a judgment.  He describes this prejudice as "substantial and real", however no details were provided.

In sum, Daniel is responsible for any oversight regarding the status of the Dalex Property.  He readily admits that at the time he placed the settlement on the record, he was aware of the foreclosure action.  (Risis Decl. at ¶ 6.)  There has been no showing of materiality, and there is at least some prejudice to Plaintiff if the Agreeemnt is not enforced.  For these reasons, rescission is not appropriate here.  *See Weisman*, 982 F.Supp.2d at 394-95.

    ***(iii)   The settlement is enforceable against Daniel and Margarita***

Daniel is not relieved of his contractual obligations merely because Margarita did not sign the Settlement Agreement.  Daniel signed the Agreement.  Moreover, Margarita should have signed the agreement, and her unexplained failure to do so is a breach in itself.  Finally, the Agreement provides for joint and several liability, making either party

responsible for fulfilling Defendants' end of the bargain. Even if it was somehow justified, the fact that Margarita did not sign the Agreement has no real effect, because under the terms of the Agreement, Daniel can be held solely liable for Defendants' collective contractual obligations.  For this reason, the Settlement Agreement is enforceable against Daniel, despite Margarita's decision not to sign.

Irrespective of the existence of the written Settlement Agreement, the settlement agreed to by all parties is enforceable against both Daniel and Margarita.  The Court finds that Daniel and Margarita intended to be bound when they agreed to settle the case on the record, notwithstanding that a later execution of a formal contract was contemplated.  *See Lightman,* 988 F.Supp. at 460.  The mere fact that Margarita decided for some unknown reason not to sign the written Agreement does not excuse her performance of the settlement reached by the parties.  Therefore, the Court will enforce the terms of the settlement. *See id.* at 463 ("Where a party to an agreement-in-principle suddenly changes its mind and refuses to execute the written contract without explanation, the court must enforce the agreement.").  The fact that Margarita claims the Plaintiff did not give notice (although Plaintiff seems to suggest otherwise) of her default is not persuasive here.  (*See* Miller Decl. at ¶ 9 CM/ECF No. 48-1.)  At the very least, Plaintiff's counsel advised Defendants' counsel that payment of the upfront payment was due and owing.  Because Defendants share the same counsel, it should have been apparent that the parties were in default.  Moreover, the Defendants' failure to pay has been the source of contention and the subject of multiple court conferences since the initial default.  Margarita cannot reasonably claim that she was unaware that Plaintiff expects her to fulfill her end of the

bargain.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion to enforce the settlement is granted.  Plaintiff is directed to submit a detailed Judgment, with all terms completed which will be entered after Defendants have an opportunity to review same.  If Plaintiff is seeking attorneys' fees for this motion, which appear to be provided for in the Settlement Agreement, he should promptly file a formal application for same, prior to submitting a proposed Judgment.

s/Mark Falk  
**MARK FALK**  
 **Chief Magistrate Judge**

**Dated:  January 6, 2021**